Peter D. Norman and John C. Norman, individually and as partners, etc.; Norman Properties (a partnership composed of Peter D. and John C. Norman); and Earnest Dean[1] appeal from a judgment declaring that certain real property the Normans conveyed to Dean was partnership property of Norman Properties, and they also appeal from the trial court's ruling against their cross-claim alleging slander of title.
In 1976, the Normans inherited a one-third undivided interest in commercial property in Greenville, Alabama, from their father, along with an undivided interest in property adjacent thereto. The other interests in the property were owned by Ellis Oil Company [2] and by the estate of Charlie Haigler, Sr.[3]
These three families operated a business on the property until the early 1980's; they then rented the property to an unrelated business and designated the Normans to act as rental agents on the properties to collect and disburse the rental income. The Normans established a bank account under the name "Norman Properties," into which they deposited monthly rental checks and other income from certain concessions that were operated on the premises. From Norman Properties, the Normans disbursed pro rata shares of the rental income to the Haigler estate and Ellis Oil Company, but they allowed their pro rata share of the rental income to accumulate and then be disbursed to pay their respective individual obligations.
On January 2, 1981, the Normans purchased a piece of commercial property in Greenville, Alabama, the title to which was taken in the names of Peter D. Norman and John C. Norman, as tenants in common. In purchasing the property, the Normans drew checks on the "Norman Properties" account.
On December 9, 1986, Robert Dwayne Bozeman and Elizabeth H. Bozeman sued the Normans, their spouses, and Norman Properties, alleging fraud and breach of warranty of habitability of a new house *Page 1212 
built by the Normans. On August 26, 1988, the trial court entered a judgment on the jury verdict for the Bozemans against Norman Properties for $50,000 and in favor of the Normans and their spouses, individually. Norman Properties appealed, and this Court affirmed, holding among other things that Norman Properties was a partnership composed of John C. Norman and Peter D. Norman. See Norman Properties v. Bozeman,557 So.2d 1265 (Ala. 990).
On October 3, 1988, the Bozemans filed in the probate offices of Lowndes and Butler Counties a certificate of judgment that erroneously reflected that the judgment entered on August 26, 1988, was against the Normans and their spouses, individually, rather than against Norman Properties, a partnership. The Normans notified the Bozemans of the mistake and then requested the Lowndes County circuit clerk to prepare a "corrected certificate" and mail it to the Bozemans. On November 14, 1988, upon receiving the corrected certificate of judgment, the Bozemans recorded it in the probate offices of Lowndes and Butler Counties.
On July 31, 1989, the Normans sold the Greenville commercial property (which they had purchased with checks drawn on the account of Norman Properties) to Earnest Dean, who purchased the equity and assumed the existing mortgages against the property. This conveyance occurred after the judgment against Norman Properties had been recorded.
On February 15, 1991, the Bozemans filed this action, seeking to have the trial court declare that the Greenville property the Normans purchased on January 2, 1981, with partnership funds and subsequently sold to Dean on July 31, 1989, was partnership property of Norman Properties as of the date it was purchased and was therefore subject to levy and sale to satisfy the judgment recorded on November 14, 1988, against Norman Properties. The Normans cross-claimed, seeking damages for slander of title, alleging that "[a]s a result of the recordation of the erroneous certificate of judgment in Lowndes and Butler Counties, Alabama, [they] were rendered incapable of selling certain real property that they had purchased through a partnership, First Company, for development and sales . . . and that as a result of the filing of the wrong judgment, [they] had suffered financial loss in the amount of $20,000."
The trial court, hearing ore tenus evidence, held in part as follows:
 "A) That the real estate described herein and conveyed . . . to [the Normans] on January 2, 1981, . . . became [the] property of . . . Norman Properties [a partnership composed of Peter D. Norman and John C. Norman at all times material to this action] on [January 2, 1981].
 "B) That said real estate became subject to levy and sale under execution of [the Bozemans'] judgment . . . on November 14, 1988, the date of the recording of a certificate of judgment on the same in the Probate Offices of Butler County, Alabama, and said property remains subject to levy and sale under execution of said judgment to this date.
 "C) That the lien of said judgment against the above-described real estate was not defeated by the subsequent conveyance to . . . Ernest Dean, on July 31, 1989; rather said conveyance was made subject to said judgment and the property is now subject to levy and sale ` under execution.
 "D) [The Normans] have failed to prove any evidence of malice on the part of the [Bozemans] in the recording of the [erroneous] certificate of judgment dated September 9, 1988[;] furthermore, [the Normans] have failed to prove any evidence of special damages resulting therefrom[;] accordingly, [because of the Normans' failure to prove the requisite elements for a slander of title action, their] cross-complaint for [a] declaratory judgment seeking damages against the [Bozemans] on account of such action is hereby denied.
 "E) That the certificate of judgment dated September 9, 1988, . . . recorded in the Probate Offices of Lowndes and Butler Count[ies] . . ., which certificate contained *Page 1213 
clerical errors, is due to be and the same is hereby ordered satisfied of record by the [Bozemans] with the notation thereon that the same is being satisfied in connection with the corrected certificate recorded in said offices."
The Normans appeal. We affirm.
Pursuant to Ala. Code 1975, § 10-8-70(b), "[p]roperty is presumed to be partnership property if it is purchased with partnership funds even though the title or other interest is acquired in the name of an individual partner or partners." While it is true that the law presumes that property purchased with partnership funds is partnership property, the mere use of partnership funds does not necessarily make the property the property of the partnership; the question becomes one of intention — whether the particular circumstances of the case indicate that the property acquired with partnership funds was intended to be partnership property.
 " 'Whether [property] belongs to a firm or to one of the individuals composing it, — when the title is in his name, and not in that of the firm, — must be solved by what appears to have been the intention of the parties. Prima facie, ownership is where the muniment of title places it, but if by all the circumstances attending the transaction, — which may be shown by parol, if there is no written evidence, — it is made to appear, that in the intention of the parties, it was purchased for and was treated as partnership property, that presumption of ownership arising from the face of the deed will be overcome, and the property will be treated as belonging to the partnership.' "
Strother v. Strother,, 436 So.2d 847 (Ala. 1983) (quotingGoldthwaite v. Janney, 102 Ala. 431, 438, 15 So. 560, 560
(1894)).
In this case, the trial court heard ore tenus evidence,[4] with regard to the parties' intention as to the ownership of the property at the time of purchase, and it viewed the witnesses and observed their demeanor. From our review of the record, we conclude that the evidence established that Norman Properties, a partnership of which John C. Norman and Peter D. Norman were partners, see Norman Properties v. Bozeman, supra, was involved in several real estate transactions involving the buying and selling of real estate over a period of eight years — four transactions had been recorded in the probate office of Butler County wherein the grantors were listed as "John C. Norman and Peter D. Norman, d/b/a Norman Properties." The evidence further established that although title to the Greenville property was in the name of the Normans, individually, approximately 117 canceled checks were drawn on the account of Norman Properties by the Normans in payment for the Greenville property between 1981 and 1988, when that account was closed. The checks were signed by John C. Norman on behalf of Norman Properties.[5] John C. Norman testified that a check was drawn on the account of Norman Properties each month from January 1981 until August 1988, in payment for the Greenville property; that this property was being paid for when the certificate of judgment against Norman Properties was recorded in Lowndes County; and that John C. Norman closed the Norman Properties account within a few days after the judgment against it was entered. His deposition testimony, which was recorded in 1987, was introduced into evidence by the Bozemans; it established *Page 1214 
that Norman Properties was "a partnership [that owned] three parcels of real estate that [were] rented out on a regular basis [, one of those parcels being] in Greenville, Alabama, . . . 127 West Commerce Street," which is the address of the Greenville property at issue.
Based on the foregoing, we hold that the trial court did not plainly and palpably err in holding that the Greenville property was partnership property subject to levy and sale under execution on the judgment against Norman Properties recorded in the probate office — that is, that the recordation of the certificate of judgment on November 14, 1988, created a lien on all of the property of Norman Properties that was subject to levy and sale under execution, including the Greenville property, and that the subsequent conveyance of that property to Dean did not defeat the lien. See Ala. Code 1975, §6-9-211. To the contrary, we hold that the trial court's findings are amply supported by the record.
The trial court found against the Normans on their claim alleging slander of title, because it found that they had failed to prove all of the requisite elements of that cause of action — it found that the Normans had failed to prove malice and special damages. See Womack v. McDonald, 219 Ala. 75,121 So. 57 (1929); see also Harrison v. Mitchell, 391 So.2d 1038
(Ala.Civ.App. 980). From our review of the record, we conclude that the trial court could have found that the Normans presented no evidence of malice and no evidence to substantiate their claim for special damages, i.e., they presented no evidence of any proposed real estate transactions with outside buyers for any specific real estate, no evidence of any specific sales price, and no evidence of any specific profit they might have made; nor did they present any testimony from a potential buyer that he would have purchased a particular piece of property but for the recordation of the original erroneous certificate of judgment. The Normans' claims were unsubstantiated and their testimony was speculative. In fact, the record reflects numerous real estate transactions of the Normans that occurred after the recording of the original erroneous certificate of judgment.
Based on the foregoing, we hold that the trial court did not plainly and palpably err in holding that the Normans had failed to prove the requisite elements of a cause of action for slander of title.
We note Norman Properties' argument in its brief on appeal that it "did not have, at the time of the rendition of the judgment or the filing of the certificate of judgment, 'legal title' or a 'perfect equity' in the subject property so as to render the same subject to the levy and execution sale." Norman Properties failed to raise this issue at trial; it did not raise at trial any question regarding the nature of the title it might or might not have possessed in the property. Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court. See Bechtel v.Crown Central Petroleum Corp., 451 So.2d 793 (Ala. 984). Therefore, we pretermit any discussion on this issue.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Although Earnest Dean was a party to this lawsuit, neither his position nor any argument in support of his position was presented in the appellants' brief on appeal. This Court will address only arguments presented for review. See Rule 28, A.R.App.P.
[2] Ellis Oil Company acquired its one-third interest in the property through the estate of Hence Ellis, deceased.
[3] The estate of Charlie Haigler, Sr., was administered by Charlie Haigler, Jr.
[4] When the trial court has heard ore tenus evidence, we will presume that its judgment based on findings of fact drawn from that evidence is correct, and we will reverse only if we find the judgment to be plainly and palpably wrong after considering all of the evidence and after making all inferences that can logically be made from the evidence. See McCrary v. Butler,540 So.2d 736 (Ala. 989).
[5] We note that the circuit clerk of Butler County certified that Plaintiff's Exhibit # 7 (which consisted of copies of the 117 canceled checks drawn on the account of Norman Properties signed by John C. Norman on behalf of Norman Properties) would be held in the clerk's office unless ordered to be delivered to this Court because it "was difficult or impracticable to reproduce." The appellants do not dispute that the Bozemans introduced these checks into evidence.