820 So.2d 810 (2001)
Bert TAYLOR and Taylor & Smith
v.
Vallarie D. STEVENSON.
1991926.
Supreme Court of Alabama.
November 2, 2001.
*811 Robert P. MacKenzie III and Alfred H. Perkins, Jr., of Starnes & Atchison, L.L.P., Birmingham, for appellants.
Talitha Powers Bailey and Wendy Allison Reese of Bailey, Wollitz & Reese, L.L.C., Birmingham, for appellee.
JOHNSTONE, Justice.
Bert Taylor and Taylor & Smith, the defendants in a legal malpractice action, are pursuing a Rule 5, Ala. R.App. P., permissive interlocutory appeal from the denial of their motion to dismiss or for summary judgment. We will call these defendants-appellants "the lawyers." Because Vallarie D. Stevenson, the plaintiff-appellee before us, was the lawyers' client in her first lawsuit but is their antagonist in this second one, we will call her by her name, Stevenson. The lawyers' ground for dismissal or summary judgment is the bar of the legal malpractice statute of limitations, § 6-5-574, Ala.Code 1975. We affirm because the lawyers presented only an unsubstantiated and incomplete argument to the trial court and only now, for the first time on appeal, broach what may be a viable and dispositive argument. See Ex parte Ryals, 773 So.2d 1011 (Ala.2000).
We will first recount the operative facts, including the procedural facts, in Stevenson's first case, the one she alleges the lawyers mishandled. We will omit procedural details that do not make a difference to the dispositive issue.
In her first case, Stevenson, represented by the lawyers, sued her coworker Rick Windsor and her employer Pemco Aeroplex, Inc. Neither Windsor nor Pemco is before us now, for both have definitively defeated Stevenson's claims, and she has no further recourse against either.
Stevenson, considering herself a victim of sexual harassment, sued Windsor for battery and invasion of privacy (Alabama does not recognize a distinct cause of action for sexual harassment, see Machen v. Childersburg Bancorporation, Inc., 761 So.2d 981, 983 n. 1 (Ala.1999)), and sued Pemco for negligence or wantonness in training and supervising Windsor. On November 3, 1997 the jury returned verdicts, and the trial court entered judgment, in favor of Windsor but against Pemco.
On Stevenson's behalf, the lawyers filed only a motion for judgment notwithstanding the verdict[1] on three grounds:
"1. The verdict in favor of Rick Windsor is against the great weight of the evidence.
"2. The verdict in favor of Rick Windsor is not supported by the evidence.

*812 "3. The verdict in favor of Rick Windsor was based on a mistake of law."
The lawyers for Stevenson did not file a motion for a new trial or a motion to set aside the verdict on the ground that the verdict in favor of Windsor was inconsistent with the verdict against Pemco.
The trial court denied Stevenson's motion for judgment notwithstanding the verdict. The rationales for denial were two: first, that Stevenson's failure to move for a directed verdict[2]precluded her motion for judgment notwithstanding the verdict; and, second, that substantial evidence favorable to the verdict-winner Windsor precluded judgment notwithstanding the verdict. The lawyers for Stevenson did not file any appeal from this ruling or from the adverse judgment on her claims against Windsor himself.
Pemco, however, moved to set aside the verdict against Pemco on the ground that it was inconsistent with the verdict in favor of Windsor. After the trial court eventually denied this motion, Pemco appealed to this Court. The lawyers for Stevenson did not file any cross-appeal to resurrect her claims against Windsor.
In our case of Stevenson v. Precision Standard, Inc., 762 So.2d 820 (Ala.1999) (Precision Standard, Inc., is the parent corporation of Pemco; the appeal involving Pemco was consolidated with other appeals that do not affect this case), this Court held that the verdict against Pemco was indeed inconsistent with the verdict in favor of Windsor. This Court reasoned, in essence, that Pemco could not be independently guilty of negligence or wantonness in training or supervising Windsor in the absence of some tort committed by him against Stevenson. This Court further reasoned that the doctrine of res judicata, operating upon the unappealed judgment in favor of Windsor, barred any further effort by Stevenson to establish that Windsor had committed any tort against her that would support Stevenson's theory that Pemco had been negligent or wanton in training or supervising Windsor. Accordingly, this Court not only reversed the judgment against Pemco but also rendered final judgment in favor of Pemco, and left Stevenson with no recourse against either Windsor or Pemco.
For her second case, on March 7, 2000, Stevenson sued the lawyers who had represented her in her first case. She alleged three acts of legal malpractice:
"The defendants did not move for a directed verdict at the close of evidence; did not move to set aside the verdict; and, most importantly, did not cross appeal the verdict for the defendant (in the original action) Rick Windsor."
In moving for dismissal of, or summary judgment in, Stevenson's second action, this malpractice action now before us on appeal, the lawyers identified only one of the three alleged acts of legal malpractice as the malpractice barred by the two-year time limit of § 6-5-574. The lawyers identified and argued only their own failure to move for a directed verdict in favor of their own then-client-and-plaintiff Stevenson and against then-defendant Windsor, as the legal malpractice barred by the statute of limitations. (See, e.g., R. 9, 17-18, 23, and 122-23.)
The lawyers did not begin to argue or to explain to the trial court in the malpractice action how Stevenson could have been entitled to a directed verdict against Windsor on her battery and invasion of privacy claims. They did not argue or demonstrate in the malpractice case that Windsor's defense in the first case was devoid of supporting evidence or that Stevenson was *813 otherwise entitled to judgment as a matter of law. Therefore, in the proceedings before the trial court on the lawyers' motion to dismiss or for summary judgment in the malpractice action, they failed to establish that their not filing a motion for directed verdict on their own client Stevenson's battery and invasion of privacy claims constituted any malpractice or act of malpractice at all. In the absence of any malpractice or act of malpractice, Stevenson's two-year time limit for suing the lawyers for malpractice could not have begun running under any theory of accrual of the cause of action. See Ex parte Panell, 756 So.2d 862 (Ala.1999) (main opinion and all special writings).
On the one hand, this state of the record on the lawyers' motion to dismiss or for summary judgment in the malpractice action did not provide Stevenson a viable malpractice claim for this particular, ostensibly nonnegligent, omission identified by the lawyers. On the other hand, this particular, ostensibly nonnegligent, omission did not start the running of Stevenson's two-year time limit to sue the lawyers for their two other alleged acts of malpractice: their failure to move to set aside the verdict in favor of Windsor on the ground of its inconsistency with the verdict against Pemco and their failure to cross-appeal the judgment in favor of Windsor after Pemco appealed the ruling and judgment against Pemco.
In presenting their motion to dismiss or for summary judgment to the trial court, the lawyers did not address these two other alleged acts of malpractice at all. Specifically, the lawyers did not argue before the trial court, as they belatedly argue to us for the first time on appeal, that Stevenson's malpractice claim based on the lawyers' failure to move to set aside the Windsor verdict for inconsistency was barred by the two-year statute of limitations. That is, the lawyers did not timely argue that their failure to move to set aside the Windsor verdict started the running of the two-year time limit set by § 6-5-574 no later than December 3, 1997, at the end of Stevenson's time to move for a new trial, 30 days after the November 3, 1997 date of judgment, Rule 59(b), Ala. R. Civ. P., over four months more than two years before the March 7, 2000 date on which she filed her malpractice action.
Indeed, the failure to move to set aside the Windsor verdict for inconsistency was the lawyers' critical malpractice, if any they committed, for this failure precluded any appeal or cross-appeal of the Windsor judgment on this same ground, inasmuch as Stevenson could not appeal on a ground not first presented to the trial court. Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992). This failure rendered any would-be appeal or cross-appeal on this ground absolutely futile. Thus this failure rendered irretrievable Stevenson's loss of her claims against Windsor. Accordingly, this failure would seem to have started the running of the time limit of § 6-5-574 under any theory of accrual of a legal malpractice action, see Ex parte Panell, supra (main opinion and all special writings) although this particular observation of ours is mere explanatory dictum, inasmuch as this particular theory of the statutory bar is not properly before us.
As we have already observed, the lawyers did not argue to the trial judge in the malpractice case that their failure to move to set aside the Windsor verdict for inconsistency started the running of the two-year time limit and thereby worked a time-bar to the plaintiffs malpractice claim. Likewise, the lawyers did not argue or establish before the trial court that the plaintiff lacked substantial evidence to prove any element of her malpractice claim based on their failure to move to set aside *814 the Windsor verdict. Finally, the lawyers did not seek a partial summary judgment to dispose of some part, aspect, or theory of Stevenson's malpractice claims in the absence of a total disposition.
Thus, the pendency of Stevenson's unchallenged theory that the lawyers committed malpractice by failing to move to set aside the Windsor verdict for inconsistency, supports the trial court in its denial of the lawyers' motion to dismiss or for summary judgment. We will affirm a trial court if it is right for any reason supported by the record. Smith v. Equifax Servs., Inc., 537 So.2d 463 (Ala.1988), and Ex parte Ryals, supra. Likewise, we will not reverse a trial court on a ground or argument not first presented to the trial court. Ex parte Ryals, supra. For these reasons, the denial of the lawyers' motion to dismiss or for summary judgment is due to be affirmed.
AFFIRMED.
MOORE, C.J., and SEE, HARWOOD, and STUART, JJ., concur.
HOUSTON, LYONS, and WOODALL, JJ., concur in the result.
LYONS, Justice (concurring in the result).
I respectfully concur in the result. The majority opinion affirms the trial court's denial of the lawyers' motion for a summary judgment; it is through that motion that they assert the affirmative defense of the two-year statute of limitations established by § 6-5-574, Ala.Code 1975.
The lawyers rely upon Ex parte Panell, 756 So.2d 862 (Ala.1999), wherein a plurality of this Court expressed the view of the three Justices joining the opinion that the statute of limitations begins to run in a legal-malpractice action when the act or omission occurs, not when the client first suffers actual damage. Id. at 868. Six Justices concurred in the result in Ex parte Panell. I concurred in the result but dissented from the rationale, noting in my special writing that the language in § 6-5-574 relied upon by the plurality was the same as the comparable portion of the Alabama Medical Liability Act at § 6-5-482(a), Ala.Code 1975. 756 So.2d at 872-73. This Court construed that act in Ramey v. Guyton, 394 So.2d 2, 4 (Ala.1980), to mean that the accrual date was the date of injury, not the date of an act that produced no concurrent injury. In fact, in Ramey, the alternative of finding the accrual date to be the time of the act alone was described as "patently unreasonable." Id. at 4. Section 6-5-574, the statute of limitations for a legal-malpractice action, was enacted after this Court had interpreted the Medical Liability Act. The appropriate rule of statutory construction holds that language borrowed from an old statute carries with it a presumption that the Legislature intended to adopt not merely the old language, but also the judicial construction of that language. See Hamm v. Harrigan, 278 Ala. 372, 178 So.2d 529, rehearing stricken, 278 Ala. 521, 179 So.2d 154 (1965), cert. denied, 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966); Fusco v. Perini North River Assocs., 601 F.2d 659, 664 (2d Cir.1979), vacated on other grounds, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980):
"[W]hen a legislature borrows an already judicially interpreted phrase from an old statute to use it in a new statute, it is presumed that the legislature intends to adopt not merely the old phrase but the judicial construction of that phrase."
See also Burnet v. Harmel, 287 U.S. 103, 108, 53 S.Ct. 74, 77 L.Ed. 199 (1932); Long v. Director, Office of Workers' Comp. Programs, 767 F.2d 1578, 1581 (9th Cir.1985); *815 Harper v. Southern Coal & Coke Co., 73 F.2d 792, 794 (5th Cir.1934).
The plurality opinion in Ex parte Panell was not favorably received in Pannell v. American Home Products Corp., 106 F.Supp.2d 1240, 1242 (N.D.Ala.2000). In that case, the United States District Court stated:
"The main opinion [in Ex parte Panell] cannot be considered anything but dictum. It is nothing more than `judge-made' law, flying in the face of earlier decisions. Its reasoning is unsound and not binding. Defendant's reliance on the Panell opinion is misguided; the decision is not controlling. Of the nine justices on the court only two concurred with the result reached by Justice See. Six of the justices refused to concur. Justices Cook, Lyons, and Johnstone filed separate opinions in which they concurred with the result but dissented with the rationale. It is highly unlikely that the six justices would ever agree with the rationale of Justice See. In light of stare decisis, Panell cannot stand."
(Footnote omitted.)
Following the rule of the plurality in Ex parte Panell would lead to the absurd result that Stevenson should have commenced her malpractice action against the lawyers while her appeal was pending and while those lawyers were representing her on that appeal. Indeed, under Ex parte Panell, a prudent attorney, upon becoming aware that an opposing party in an appellate proceeding has raised an issue, which, if resolved adversely to the prudent attorney's client, might give rise to a legal-malpractice claim against that attorney, would be obliged to advise the client to seek independent representation. Failure to do so might give rise to a separate act of malpractice.
Stevenson's action was commenced within two years of the release of this Court's decision in Stevenson v. Precision Standard, Inc., 762 So.2d 820 (Ala.1999). I would affirm the trial court's judgment on the ground that the cause of action did not accrue until Stevenson suffered her adverse ruling from this Court in Precision Standard.
WOODALL, Justice (concurring in the result).
I concur with the holding that the trial court's denial of the lawyers' motion to dismiss or for a summary judgment is due to be affirmed. However, I disagree with the notion that the lawyers had some burden to establish that their not filing a motion for a judgment as a matter of law constituted an act of malpractice. Also, I disagree with the purposeful inclusion in the main opinion of any "mere explanatory dictum." This Court should limit its discussion to those issues that are properly before it.
NOTES
[1] Since October 1, 1995, properly named a renewed motion for a judgment as a matter of law.
[2] Since October 1, 1995, properly named a motion for a judgment as a matter of law.